IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KEYNA LEONARD, as the surviving ) <br> daughter of decedent Arlen Dority, et al., ) <br>　　　　　　　　　　　　　　　　　　　) <br>　　　　　　　　Plaintiff, 　　　　　　　) <br>　　　　　　　　　　　　　　　　　　　) <br> v.　　　　　　　　　　　　　　　　　　) <br>　　　　　　　　　　　　　　　　　　　) <br> HGM PARK MANOR OF SALINA, LLC　　) <br> d/b/a Smoky Hill Rehabilitation Center and ) <br> HMG SERVICES, LLC,　　　　　　　　) <br>　　　　　　　　　　　　　　　　　　　) <br>　　　　　　　　Defendants.　　　　　　) <br>　　　　　　　　　　　　　　　　　　　) | CIVIL ACTION <br><br> No. 22-2267-KHV |

**MEMORANDUM AND ORDER**

Keyna Leonard, the surviving daughter of Arlen Dority and administrator of his estate, filed suit against HMG Park Manor of Salina, LLC d/b/a Smoky Hill Rehabilitation Center and HMG Services, LLC, asserting claims for wrongful death and negligence.[1]  This matter is before the Court on Defendants HMG Park Manor Of Salina, LLC d/b/a Smoky Hill Rehabilitation Center & HMG Services, LLC's Motion For Summary Judgment (Doc. #100) filed October 2, 2023 and Plaintiffs (1) Motion For Judicial Notice And (2) Response And Suggestions In Opposition To Defendants' Motion For Summary Judgment (Doc. #105) filed October 30, 2023.  For reasons stated below, the Court sustains defendants' motion for summary judgment and overrules plaintiff's motion as moot.

**Legal Standard**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories,

---

[1] On September 11, 2023, plaintiff dismissed all claims against Healthmark Group, Ltd., HMG Healthcare, LLC and Healthmark Group Kansas, LLC.  See Stipulation Of Dismissal With Prejudice (Doc. #95).

and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion.  Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018).  The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative.  Liberty Lobby, 477 U.S. at 250–51.  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251–52.

## Factual Background

The following facts are undisputed or, where disputed, viewed in the light most favorable

to plaintiff, the non-movant.

## I.      Operations And Management Of Smoky Hill

HMG Park Manor of Salina, LLC d/b/a Smoky Hill Rehabilitation Center ("Smoky Hill") is a skilled nursing facility in Salina, Kansas.  Prior to the events involved in this litigation, Smoky Hill and HMG Services, LLC ("HMG") entered into a Consulting Agreement which made HMG responsible for hiring a nursing home administrator for Smoky Hill, proposing a budget and providing monthly financial reports.[2]  HMG retained final approval for Smoky Hill's budget, including large expenditures, and access to the facility's operating bank account.  The nursing home administrator did not have access to the account.  For its services, HMG received a management fee of five per cent of Smoky Hill's gross revenue.

HMG hired Joe Benter as the nursing home administrator for Smoky Hill.  Kendall Kepler, an employee of HMG, acted as Benter's direct supervisor.  As administrator of Smoky Hill, Benter directed the "day-to-day functions of the facility in accordance with current federal, state, and local standards, guidelines, and regulations that govern nursing facilities to assure the highest degree of quality care."  Administrator Job Description (Doc. #105-1) filed October 30, 2023 at 1.  These responsibilities included the hiring and staffing of Smoky Hill resident units.

When hiring nursing staff, Benter worked with the director of nursing at Smoky Hill, though each had their specific roles.  The director of nursing took on the larger role in the hiring process, including conducting the interview process and addressing any previous employment problems.  Smoky Hill would order a Kansas Bureau of Investigation background check on each applicant and Benter personally reviewed the results prior to hiring an applicant.

---

[2]      Neither party specifies the execution date for this agreement.  Nevertheless, the parties do not dispute the enforceability of this agreement during the events in question.

In addition to hiring, Benter directed the staffing at Smoky Hill, including the COVID-19 isolation unit. After HMG determined the number of staff available each day, it provided Benter the available staff for each resident per day. Benter staffed the units based on the number of residents and their individual needs. Benter made the final call on matters of staffing; he did not have to request approval from HMG on day-to-day decisions.

## II.     Dority's Fall And Injury

On April 9, 2021, Smoky Hill admitted Arlen Dority, age 82, after a fall at his home on April 6, 2021 and a decline in his ability to care for himself. Dority resided in the COVID-19 isolation unit. On April 10, 2021, Smoky Hill completed a 48 Hour Care Plan Conference Summary and conducted a fall risk assessment for Dority, and concluded that Dority was at high risk for falls. Shortly thereafter, Dority began physical therapy and occupational therapy to improve his balance and decrease the risk for falls. Between April 9 and April 17, 2021, Dority did not have a documented fall at Smoky Hill.

On April 18, 2021, licensed nurse Andrea Stika was assigned to Dority's hallway. Stika created the following progress note at 3:59 A.M.:

> At approx.[imately] 1:25 am this morning, this nurse heard resident hollering out for help in his room. Upon arriving, resident was found lying on the floor against the wall, mostly on his left side. He was complaining of right hip and knee pain from his fall, and has scraped his elbow & behind his right ear. When touching the right hip, [Dority] yelled out in pain. He stated that he could not move it. Neuros were done, and no obvious injury noted, besides the scrape behind right ear.

Smoky Hill notified Salina Emergency Medical Services ("EMS"), which arrived at Smoky Hill six minutes after the nurse found Dority, at 1:31 A.M. EMS transferred Dority to Salina Regional Medical Center, where radiographs indicated a fractured right hip. At the hospital, Dority relayed to staff, and personnel recorded, that the fall occurred while Dority was walking down the hallway at full speed. Surgeons conducted an open reduction internal fixation of the fracture.

At 4:07 P.M. on April 19, 2021, one day after his fall, Dority died. His death certificate listed hip fracture due to a fall as the primary cause of death, with congestive heart failure as a contributing cause.

On July 9, 2022, Keyna Leonard, Dority's surviving daughter and the administrator of his estate, sued defendants for wrongful death and negligence. On October 10, 2023, Smoky Hill and HMG filed a motion for summary judgment on all claims against them. Specifically, defendants jointly assert that plaintiff has not demonstrated a genuine issue of material fact whether defendants' alleged negligence was the proximate cause of Dority's fall.[3] Plaintiff responds that the record reveals a genuine issue of material fact (1) whether defendants' alleged breach of the standard of care caused Dority's injury; and (2) whether HMG owed a legal duty to him.

## Analysis

Plaintiff claims that defendants negligently failed to do one or more of the following: (1) include in Dority's Interim Care Plan fall-related interventions of a bed in the lowest position and a fall mat; (2) create a Comprehensive Care Plan, containing fall-related interventions of a bed in the lowest position and a fall mat; (3) ensure Dority's bed was in the lowest position and a fall mat in place on the morning of April 18, 2021; (4) adequately supervise and monitor Dority on April 18, 2021; (5) ensure Dority's safe transfer from one position to the other on April 18, 2021; and (6) ensure defendants employed sufficient competent staff. Pretrial Order (Doc. #99) filed September 28, 2023 at 23.

---

[3] On October 30, 2023, plaintiff filed a motion to dismiss with prejudice her punitive damages claims against all defendants. See Plaintiffs' Motion To Dismiss Their Punitive Damages Claims With Prejudice (Doc. #104). The Court sustained plaintiff's motion and does not address this issue.

On November 12, 2023, defendants withdrew their COVID-19 immunity defense. Defendants' Reply (Doc. #110) at 1. Accordingly, the Court does not address this defense.

Defendants jointly seek summary judgment, arguing that plaintiff has not demonstrated a genuine issue of material fact whether they breached any alleged duty of care and, if so, whether that breach caused Dority's injury.

Negligence is "the lack of ordinary care or more specifically, the failure of a person to do something that a reasonably careful person would do, or the act of a person in doing something that a reasonably careful person would not do, measured by all the circumstances then existing." Elstun v. Spangles, Inc., 289 Kan. 754, 756, 217 P.3d 450, 453 (2009) (quotation and citation omitted). To establish negligence under Kansas law, plaintiff must prove that (1) defendants owed a duty to Dority, (2) defendants breached that duty, (3) defendants' breach of duty caused the injury to Dority and (4) Dority suffered damages. Shirley v. Glass, 297 Kan. 888, 894, 308 P.3d 1, 6 (2013).

A.   Duty

HMG argues that it did not have a legal duty to protect Dority from injury. Specifically, it argues that HMG had no involvement in Smoky Hill's (1) hiring practices, (2) training of staff, (3) standards for staff quality and competency, (4) decisions on staff salary and (5) quality of resident care. Plaintiff responds that HMG owed a duty of care to Dority because it exercised managerial and operational control over Smoky Hill. Plaintiff presents evidence that (1) HMG exercised control over the hiring of Benter, the nursing home administrator, who handled daily operations at Smoky Hill; (3) Benter reported to an HMG employee; and (3) because HMG approved Smoky Hill's budget and large expenditures, retained access to Smoky Hill's operating bank account and earned a management fee as a percentage of Smoky Hill's gross revenue, HMG exercised financial control over Smoky Hill. This evidence creates a genuine issue of material fact whether HMG exercised management and control over Smoky Hill.

"As a general rule, the proprietors of a nursing home are under a duty to exercise reasonable care to avoid injuries to patients, and the reasonableness of such care is to be assessed in the light of the patient's physical and mental condition." Tudor v. Wheatland Nursing L.L.C., 42 Kan. App. 2d 624, 629, 214 P.3d 1217, 1222 (Kan. Ct. App. 2009) (quoting Juhnke v. Evangelical Lutheran Good Samaritan Society, 6 Kan. App. 2d 744, 634 P.2d 1132, Syl. ¶ 2 (Kan. Ct. App. 1981)).  On this record, a jury could reasonably find that HMG and Smoky Hill jointly operated a nursing home, and that both entities owed duties of care to Dority.

Plaintiff asks the Court to take judicial notice of a web page which publishes Smoky Hill's sworn statements on a CMS Form 855a, Medical Enrollment Application.[4]   Plaintiff draws the Court's attention to the portion of the form which lists HMG as an entity exercising operational or managerial control over Smoky Hill.

Courts often take judicial notice of certain public records, including legislative committee reports and publications made by various administrative agencies.  See, e.g., Territory of Alaska v. Am. Can Co., 358 U.S. 224, 227 (1959) (taking judicial notice of legislative history); New Mexico ex rel. Richardson v. Bureau of Land Mgmt., 565 F.3d 683, 702 n.22 (10th Cir. 2009) (two federal agency websites); Winzler v. Toyota Motor Sales U.S.A., Inc., 681 F.3d 1208, 1213 (10th Cir. 2012) (materials filed with federal agency).  Here, plaintiff requests judicial notice of the web page of the Centers for Medicare & Medicaid Services (a federal agency), where the CMS Form 855a is posted.

The record otherwise reveals a genuine issue of material fact whether HMG exercised

---

[4]     Smoky Hill Rehabilitation Center Ownership, available at https://www.medicare.gov/care-compare/details/nursing-home/175185?city=Salina&state=KS&zipcode=&measure=nursing-home-ownership (last visited December 1, 2023).

operational and managerial control over Smoky Hill, sufficient to create a duty of care to Dority. Consequently, the Court need not resolve plaintiff's motion for judicial notice, to which defendants object.

### B. Causation

Defendants argue that they are entitled to summary judgment because plaintiffs have not proffered expert testimony that their actions proximately caused Dority to fall.

Proximate cause is that which "in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act." Puckett v. Mt. Carmel Reg'l Med. Ctr., 290 Kan. 406, 420, 228 P.3d 1048, 1060 (2010) (quoting Idbeis v. Wichita Surgical Specialists, 285 Kan. 485, 499, 173 P.3d 642, 652 (2007)). Proximate causation has two components: causation in fact and legal causation. Montgomery v. Saleh, 311 Kan. 649, 659, 466 P.3d 902, 911 (2020). Causation in fact requires a cause-and-effect relationship between defendants' conduct and the resulting harm. Id. Legal causation requires that defendants' conduct "foreseeably create[s] a risk of harm and cause[s] or contribute[s] to the resulting harm." Id.

In medical malpractice actions, plaintiff bears the burden of showing that defendants acted negligently and that said negligence actually caused the alleged injury. See Hare v. Wendler, 263 Kan. 434, 440, 949 P.2d 1141, 1146 (1997) (citing Bacon v. Mercy Hosp. of Ft. Scott, Kan., 243 Kan. 303, 307, 756 P.2d 416, 420 (1988)). Plaintiff's complaint does not expressly categorize this case as a medical malpractice action, and the Court does not view it as such. Nevertheless, whether a case is classified as ordinary negligence or medical malpractice does not determine whether expert testimony on the issue of causation is required. Cunningham v. Riverside Health Sys., Inc., 33 Kan. App. 2d 1, 5, 99 P.3d 133, 136 (Kan. Ct. App. 2004). Where the lack of reasonable care

or the existence of proximate cause is apparent to the average layman from common knowledge or experience, expert testimony is not required to establish the accepted standard of care and to establish a breach of the standard of care or causation.  Hare, 263 Kan. at 440, 949 P.2d at 1146.

Plaintiff does not assert that the common knowledge exception applies here, but this case does not turn on whether expert testimony is required to establish defendants' deviation from the requisite standard of care or whether defendants' deviation was the proximate cause of Dority's fall.  The record is completely devoid of evidence, from lay or expert sources, that Dority's fall was the proximate result of any breach of duty by either defendant.

Admittedly, plaintiff has retained two experts: nurse Eleanore Tache and Dr. John Kirby.[5]  Tache is a registered nurse and licensed nursing home administrator.  Plaintiff agrees that as a nurse, pursuant to Funk v. Pinnacle Health Facilities XXXII., LP, 353 F. Supp. 3d 1138, 1139 (D. Kan. 2018), and Cunningham, 33 Kan. App. 2d at 5, 99 P.3d at 136, Tache cannot testify to the medical cause of Dority's injuries or death.  Plaintiff, however, asserts that Tache can testify to (1) defendants' deviations from the standard of care and (2) how those deviations caused Dority's fall.  Plaintiff did not designate Tache to testify on whether defendants' deviations from any standard of care caused Dority's fall, however, and it is not clear that she has factual knowledge or expertise which is relevant to that issue.  Plaintiffs' Non-Retained And Retained Expert Disclosure (Doc. #69) filed May 15, 2023 at 2 ("Eleanore Tache is expected to testify as to all aspects of nursing standard of care and nursing home administration.").

---

[5] Neither party presents the substance of Tache nor Dr. Kirby's expert reports.  "The [C]ourt may, but is not obligated to, search for and consider evidence in the record that would rebut the defendant[s'] evidence, but that plaintiff has failed to cite."  Conoco Inc. v. J.M. Huber Corp., 148 F. Supp. 2d 1157, 1166 (D. Kan. 2001), aff'd, 289 F.3d 819 (Fed. Cir. 2002).  The Court has reviewed the expert reports, however, for purposes of this motion.

Tache's expert report states that she examined whether any deviations from the standard of care "were a probable cause of harm to [Dority]." Nurse Eleanore Tache's Expert Report (Doc. #69-2) filed May 15, 2023 at 1. She broadly concluded that "multiple deviations" occurred, and that they were a "probable cause" of harm to Dority. Id. She criticized defendants' documentation practices, but she did not implicate them in Dority's fall on April 18, 2021. She found fault with defendants' assessments because a registered nurse did not conduct them, but she likewise expressed no opinion that this shortcoming contributed to his fall. She opined that defendants' care plan was not sufficiently comprehensive or implemented early enough. But Dority took no falls before the one in question, and the record contains no evidence that any such deviation from the standard of care caused Dority's fall.[6] She states that defendants had inadequate staffing on the night in question, but does not suggest how additional staff would likely have prevented the fall. Ultimately, her opinion on causation is that defendants "failed to prevent an avoidable fall."[7] Id. at 10. This opinion does not create a genuine issue of material fact whether any alleged breach of defendants' duty of care caused Dority's injury.

---

[6] Prior to his admission at Smoky Hill, on April 5, 2021, Dority went to the emergency room at Salina Regional Medical Center complaining of back pain after a fall. Nurse Eleanore Tache's Expert Report (Doc. #69-2) at 2. On April 6, 2021, Dority returned to the emergency room after experiencing another fall. Id. He was diagnosed with an L2 compression fracture and released. Id. Later that same day, Dority returned to the emergency room and was hospitalized for weakness, swelling and a cough. Id. While at the emergency room that day, the providers noted that Dority had had approximately six falls in the prior week. Pretrial Order (Doc. #99) at 14. Salina Regional Medical Center discharged Dority to Smoky Hill for continued care. Despite this medical history with falls and balance problems, Dority only had one recorded fall at Smoky Hill, the fall on April 18, 2021, which resulted in his death.

[7] On July 21, 2023, plaintiff filed Tache's Supplemental Expert Report (Doc. #83). Tache reviewed additional materials related to the case, including various depositions and the incident report, and reached the same conclusion that "multiple deviations from the standard of care occurred" and that "these deviations were a probable cause of harm" to Dority. Id. at 2.

Plaintiff also retained physician Dr. John Kirby to testify to "all aspects of negligence [and] causation." Plaintiffs' Non-Retained And Retained Expert Disclosure (Doc. #69) at 1. In his expert report, Dr. Kirby opines that (1) given Dority's medical history, he was at a risk of falling while in Smoky Hill's care; (2) Smoky Hill's fall prevention interventions were "inadequate to prevent" Dority's fall on April 18, 2021; and (3) the trauma of the fall caused a hip fracture, which together with congestive heart failure, caused his death. Dr. John Kirby's Expert Report (Doc. #69-1) filed May 15, 2023 at 7.

Dr. Kirby's expert report established a causal link between Dority's fall and his death. It does not, however, create a genuine issue of material fact whether any alleged deviations in the standard of care were the proximate cause of Dority's fall. Like Tache, Dr. Kirby advances the conclusory opinion that "[f]all prevention interventions were inadequate to prevent Mr. Dority's 4/18/21 fall." Id. That opinion does not create a genuine issue of material fact whether defendants breached a duty of care which resulted in Dority's fall. Breach of the standard of care cannot be inferred merely from lack of success or an adverse result in treatment. Bacon, 243 Kan. at 307, 756 P.3d at 420. If the Court were to equate breach with an adverse result, the test would become no different than strict liability; indeed, medical facilities are not responsible each time a resident or patient is injured. Consequently, with or without expert testimony on causation, mere failure to prevent a bad outcome is not sufficient to create a genuine issue of material fact as to liability.[8]

---

[8] Kansas law defines strict liability as liability "imposed on an actor apart from either (1) an intent to interfere with a legally protected interest without a legal justification for doing so, or (2) a breach of a duty to exercise reasonable care (i.e., actionable negligence)." City of Neodesha v. BP Corp. N. Am., 295 Kan. 298, 313, 287 P.3d 214, 224 (2012) (quoting Williams v. Amoco Production Co., 241 Kan. 102, Syl. ¶ 7, 734 P.2d 1113 (1987)).

Kansas courts generally impose strict liability in tort law for abnormally dangerous activities as stated in the Restatement (Second) of Torts § 519. See id. at 318, 227. The

(continued. . .)

Under Rule 702, Fed. R. Evid., and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), expert testimony from Tache and Dr. Kirby on the issue of causation would cause confusion and delay. Their opinions are based on the incorrect legal premise that failure to prevent an accident is sufficient to find liability, and are tethered to specific evidence about the circumstances of the fall. The record is totally devoid of evidence about how Dority fell or why. Importantly, no other residents or staff witnessed Dority's fall the morning of April 18, 2021.[9] Thus, no witnesses can testify to what happened that morning or what, if any, precautions would have prevented a fall under the circumstances. To submit this question to a jury would force them to speculate whether—even if defendants failed to exercise appropriate fall-related interventions and adequately supervise and monitor Dority—those deviations from the standard of care were the proximate cause of his fall.

Absent evidence of causation, plaintiff's case only survives if the doctrine of res ipsa loquitur applies. Under this doctrine, the mere fact that an injury occurred may raise an inference of negligence. Hubbard v. Mellion, 48 Kan. App. 2d 1005, 1014, 302 P.3d 1084, 1093 (Kan. Ct. App. 2013). The doctrine, however, only applies in a negligence action "where there is no direct proof of negligence, but where circumstances are established so as to leave no conclusion other

---

[8] (. . .continued)
Restatement provides that "(a) [o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land, or chattels of another resulting from the activity, although he or she has exercised the utmost care to prevent the harm; and (b) this strict liability is limited to the kind of harm the possibility of which makes the activity abnormally dangerous." Restatement (Second) of Torts § 519 (Am. L. Inst. 1977). When the facts are undisputed, whether an activity is considered abnormally dangerous is a question of law to be decided by the Court. City of Neodesha, 295 Kan. at 324, 287 P.3d at 231.

[9] Dority reported that he was walking the hallway when he fell. The accuracy of this report is doubtful because Stika found him lying on the floor against a wall in his room. Dority also told his physician on April 14, 2021, that his wife was deceased, when in fact she resided at another nursing facility. Nurse Eleanore Tache's Expert Report (Doc. #69-2) at 4.

-12-

than that defendant be at fault." Tatro v. Lueken, 212 Kan. 606, 611, 512 P.2d 529, 534 (1973). Stated another way, res ipsa loquitur cannot be applied where it is unknown what actually caused plaintiff's injury. Arterburn v. St. Joseph Hosp. & Rehab. Ctr., 220 Kan. 57, 65, 551 P.2d 886, 893 (1976). Accordingly, this doctrine cannot apply here. Although plaintiff did present evidence of injury, plaintiff has not presented evidence that given the circumstances of Dority's fall, defendants had to be at fault. Thus, the doctrine of res ipsa loquitur does not apply.

In conclusion, even viewing the record in the light most favorable to plaintiff, the proffered expert testimony does not create a genuine issue of material fact whether defendants' failure to exercise reasonable care proximately caused Dority's injury. Absent such evidence, no reasonable jury could hold defendants liable without speculating about the circumstances or reasons for his fall.

**IT IS THEREFORE ORDERED** that Defendants HMG Park Manor Of Salina, LLC d/b/a Smoky Hill Rehabilitation Center & HMG Services, LLC's Motion For Summary Judgment (Doc. #100) filed October 2, 2023 is **SUSTAINED.**

**IT IS FURTHER ORDERED** that Plaintiffs (1) Motion For Judicial Notice And (2) Response And Suggestions In Opposition To Defendants' Motion For Summary Judgment (Doc. #105) filed October 30, 2023 is **OVERRULED as moot**.

Dated this 6th day of December, 2023 at Kansas City, Kansas.

                                                s/ Kathryn H. Vratil
                                                KATHRYN H. VRATIL
                                                United States District Judge